**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ROMULO HERRERA, CALEB GONZALEZ, EDWIN DURAN, JORGE GONZALEZ, ERICK GUARDADO, NOE GONZALEZ, GEOVANNY RAMIREZ, on behalf of themselves and others similarly situated,

Plaintiffs,

-against-

CHARLES ZANGHI, MICHELE IRVING, MICHELE ZANGHI, CHEAP CHARLIE'S TREE SERVICE, CMZ LEASING CORP. d/b/a CHEAP CHARLIE'S TREE SERVICE, CHEAP CHARLIE'S TREE & LANDSCAPE DESIGN, INC.,

Defendants.

---

**Index No. 23-cv-03726(JMS)(ST)**

**AMENDED COMPLAINT**

**FLSA COLLECTIVE ACTION**
**RULE 23 CLASS ACTION**

---

Plaintiffs ROMULO HERRERA ("ROMULO"), CALEB GONZALEZ ("CALEB"), EDWIN DURAN ("EDWIN"), JORGE GONZALEZ ("JORGE"), ERICK GUARDADO ("ERICK"), NOE GONZALEZ ("NOE"), and GEOVANNY RAMIREZ ("GEOVANNY") on behalf of themselves, and others similarly situated current and former and current employees of Defendants (the "Class"), and those who elect to opt into this action (the "FLSA Collective Plaintiffs") and complaining of the Defendants CHARLES ZANGHI ("CHARLES"), MICHELE IRVING ("IRVING") MICHELE ZANGHI ("ZANGHI") (IRVING and ZANGHI, collectively, "MICHELE"), CHEAP CHARLIE'S TREE SERVICE ("TREE SERVICE") CMZ LEASING CORP. d/b/a CHEAP CHARLIE'S TREE SERVICE ("CMZ") CHEAP CHARLIE'S TREE & LANDSCAPE DESIGN, INC. ("CHEAP CHARLIES")(TREE SERVICE, CMZ and CHEAP CHARLIES, collectively the "CORP.") herein, by their attorneys, MONTEIRO & FISHMAN LLP, upon information and belief, and at all times hereinafter mentioned, allege as follows:

**NATURE OF THE ACTION**

1.        Plaintiffs allege on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, that they are entitled to, under 29 U.S.C. § 201 *et seq*. ("FLSA"), *inter alia*, from Defendants: (i) unpaid wages for overtime work performed, (i) liquidated damages, (iii) attorneys' fees, (iv) interest, and (v) all costs and disbursements associated with this action.

2.        Plaintiffs further allege, *inter alia*, that they are entitled to, under New York Labor Law, Art. 6, §§ 190 *et seq*. and Art. 19, §§ 650 *et seq.*, (collectively "NYLL"), and N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 142 and 146 from Defendants: (i) unpaid wages for overtime  work performed, (ii) unpaid spread of hours wages for each day Plaintiffs worked ten or more hours, (iii) liquidated damages for failure to pay overtime premium and spread of hours pay, (iv) liquidated damages for failure to furnish Plaintiff a notice and acknowledgment at the time of hiring, (v) attorneys' fees, (vi), civil damages for filing false taxes, (vii) interest, and (viii)  all costs and disbursements associated with this action.

**JURISDICTION AND VENUE**

3.        This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 due to Plaintiffs' claims under FLSA, and supplemental jurisdiction over the New York state law claims pursuant to 28 U.S.C. § 1367.

4.        Venue is proper as Defendants conduct business in Nassau County, the wrongs complained of herein occurred in Nassau County and under 28 U.S.C. § 1391.

**PARTIES**

*Plaintiff*

5.        Plaintiffs largely reside in SUFFOLK County, New York.

*Defendants*

6.        All Defendants are collectively referred to as "Defendants."

7.        The CORP. has an address at 112 Shinnecock Lane, East Islip, NY 11730, 13 Elm

Place, Amityville, NY 11701.

8.      CHARLES is a principal of the CORP.

9.      MICHELE is a principal of the CORP.

10.     CHARLES and MICHELE are husband and wife and reside at: 26 The Helm, East Islip, NY 11730 (under the name "Keeping Capital Ventures"), 112 Shinnecock Lane, East Islip, NY 11730, 13 Elm Place, Amityville, NY 11701, 6 Lindsey Place, Holbrook, NY 11741 and 2394 Merrick Avenue, Merrick, NY 11560.

11.     The CORP. is a land management and tree care company.

12.     Upon information and belief, CHARLES  is: the President, Chief Executive Officer or a corporate officer of the CORPS., owns, is a majority shareholder, an agent of, manager of, has active control of the CORPS.,  has operational control of the CORPS., sets the weekly work-hours of the employees, has the power to establish the wages of the employees of the CORPS., implemented and supervised the wage and hour practices and policies relating to employees, controlled significant business functions of the CORPS., determined employee salaries, made hiring decisions, maintains the employee records of the CORPS., directed the managers and employees of the CORPS. as to duties and tasks of the employees thereof, acts directly and indirectly for and in the interest of the CORPS., hires and fires employees thereof, and exercises sufficient control of the operations of the Plaintiff so as to be an "employer" of Plaintiffs under  FLSA 29 USC § 203(d), and N.Y. Lab. Law § 190(3).

13.     CHARLES exercises sufficient control of the operations of the Plaintiffs so as to be an "employer" of Plaintiffs under FLSA 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

14.     Upon information and belief, MICHELE is: the President, Chief Executive Officer or a corporate officer of the CORPS., owns, is a majority shareholder, an agent of, manager of, has active control of the CORPS.,  has operational control of the CORPS., sets the weekly work-hours of

the employees, has the power to establish the wages of the employees of the CORPS., implemented and supervised the wage and hour practices and policies relating to employees, controlled significant business functions of the CORPS., determined employee salaries, made hiring decisions, maintains the employee records of the CORPS., directed the managers and employees of the CORPS. as to duties and tasks of the employees thereof, acts directly and indirectly for and in the interest of the CORPS., hires and fires employees thereof, and exercises sufficient control of the operations of the Plaintiff so as to be an "employer" of Plaintiffs under  FLSA 29 USC § 203(d), and N.Y. Lab. Law § 190(3).

15.    MICHELE exercises sufficient control of the operations of the Plaintiffs so as to be an "employer" of Plaintiffs under FLSA 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

16.    The CORPS. exercises sufficient control of the operations of the Plaintiff so as to be an "employer" of Plaintiffs under FLSA 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

17.    At all relevant times, Defendants employed more than two persons and have been, and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

18.    Upon information and belief, during each of the three years preceding the date of this complaint, Defendants have had gross revenues in excess of $500,000 per year.

19.    At all relevant times, Plaintiffs, in their work for Defendants, have handled and worked on goods or materials that have been moved in, or produced, for commerce.

20.    At all relevant times, the were each an "enterprise engaged in commerce or in the production of goods for commerce" under FLSA 29 U.S.C. § 203.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.    Plaintiffs bring these claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. 216(b), on behalf of all non-exempt persons employed by Defendants at any New York

location on or after the date that is three years before the filing of the Complaint in this case as defined herein ("Collective Plaintiffs").

22. At all relevant times, Plaintiffs and the other Collective Plaintiffs are, and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them one and one half times their hourly rate for work in excess of forty (40) hours per workweek. The claims of Plaintiffs stated herein are essentially the same as those of the other Collective Plaintiffs.

23. The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to 16(b) of the FLSA, 29 U.S.C. 216(B). The Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the Collective Plaintiffs via first class mail to the last address known to Defendants.

24. The named Plaintiffs are representative of those other workers and is acting on behalf of Defendants' current and former employees' interest, as well as his own interest in bringing this action.

## CLASS ACTION ALLEGATIONS

25. Plaintiffs also bring their N.Y. Lab. Law claims pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at any New York location on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

26. All said persons, including Plaintiffs, are referred to herein as the "Class" or the "Rule 23 Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the

positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under the F.R.C.P. 23.

27.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

28.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

29.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. In addition, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.     Upon information and belief, Defendants and other employers throughout the state violated the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

32.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Plaintiffs and the Rule 23 Class are non-exempt from entitlement to overtime compensation for all hours worked in excess of 40 hours per week;

b)    What policies, practices and procedures Defendants implemented regarding payment of overtime compensation, spread of hours, and breaks and meal periods;

c)    Whether Defendants failed to pay Plaintiffs and the Rule 23 Class overtime compensation for all hours worked in excess of forty (40) hours per week within the meaning of all applicable laws, including the NYLL Article 19 § 650 *et seq.* and the supporting NYDOL Regs., 12 N.Y.C.R.R. Part 142;

d)    Whether Defendants failed to pay Plaintiffs and the Rule 23 Class spread of hours pay by failing to pay an additional hour's pay when they worked more than ten (10) hours in a day, as provided by all applicable laws, including 12 N.Y.C.R.R. sect. 142-2.4;

e)    Whether Defendants failed to provide Plaintiffs and the Rule 23 Class breaks and meal periods in violation of NYLL sect. 162(4);

f)    The nature and extent of the Rule 23 Class-wide injury and the appropriate measure of damages for the Class; and

g)    Whether Defendants failure to pay Plaintiffs and the Rule 23 minimum wage and overtime compensation for all hours worked in excess of forty (40) hours per week, spread of hours pay was done willfully or with reckless disregard for the applicable federal and state wage and hours laws, and whether Defendants' failure to afford proper meal and break period was done willfully or with reckless disregard for the applicable federal and state wage and hours laws.

## STATEMENT OF FACTS

33.    CHARLES, MICHELE and the CORPS. were in charge of hiring Plaintiffs.

34.    CHARLES, MICHELE and the CORPS. decided the job duties that Plaintiffs perform.

35.    CHARLES, MICHELE and the CORPS. determined Plaintiffs' hourly rate of pay.

36.    CHARLES, MICHELE and the CORPS. determined Plaintiffs' work schedule.

37.    CHARLES, MICHELE and the CORPS. determined the number of hours that Plaintiffs worked.

38.    CHARLES, MICHELE and the CORPS. managed Plaintiffs' employment, including the amount of overtime that they worked each workweek.

39.    CHARLES, MICHELE and the CORPS. supervised and controlled the conditions of Plaintiffs' employment.

40.    CHARLES, MICHELE and the CORPS. maintained Plaintiffs' employment records.

41.    CHARLES, MICHELE and the CORPS. have dictated, controlled, and ratified the wage and hour and related employee compensation policies.

42.    CHARLES, MICHELE and the CORPS. were aware of Plaintiffs' work hours but failed to pay Plaintiffs the full and proper amount of wages they were entitled to each week.

43.    CHARLES and MICHELE participated, controlled, directed, and had/have operational control of the day to day operations of the CORPS.

44.    ROMULO was employed by Defendants as a driver, tree pruner, cutter, planter, trimmer, machine operator, and overall construction worker from before the statutory time until April 2023. He generally worked over 40 hours a week.

45.    ROMULO was paid $300 a day in 2016, then $375 a day from 2018 to 2023,  only if the work crew hit a quota of $8,000-$9,000 of invoiced work a day.  If the quota wasn't hit, then he would earn half his daily wages.  ROMULO was paid in cash until 2022, when he started to get paid by check of about $525 every two weeks, with the remainder of his pay in cash.

46.    During the work-week of May 7, 2021 to May 13, 2021  ROMULO worked about 72 hours, but was only paid $525 by company check and the remainder of his pay in cash.  During that work-week, ROMULO was not paid an overtime premium.  Additionally, ROMULO was paid by check every two weeks.

47.     CALEB was employed by Defendants as a tree climber, pruner, cutter, machine operator and overall construction worker from before the statutory time until November 2022, then from February 2023 until April 2023. He generally worked over 40 hours a week.

48.     CALEB was paid $200 a day in 2016, then $400 a day from 2018 to 2023 only if the work crew hit a quota of $8,000-$9,000 of invoiced work a day.  If the quota wasn't hit, then he would earn half his daily wages. CALEB was paid in cash.

49.     During the work-week of May 7, 2021 to May 13, 2021 CALEB worked about 72 hours, but was only paid $2,400 in cash.  During that work-week, CALEB was not paid an overtime premium.

50.     EDWIN DURAN was employed by Defendants as a driver, stump grinder, pruner, cutter, machine operator and overall construction worker from March 2020 to December 2021 then from April 2022 until April 2023. He generally worked over 40 hours a week.

51.     EDWIN was paid $250 a day in 2020, then $275 a day starting July 2020, then $300 a day starting April 2022 only if the work crew hit a quota of $8,000-$9,000 of invoiced work a day. If the quota wasn't hit, then he would earn half his daily wages. EDWIN was paid in cash.

52.     During the work-week of April 8, 2022 to April 14, 2022, EDWIN worked about 72 hours, but was only paid $1,800 in cash.  During that work-week, EDWIN was not paid an overtime premium.

53.     JORGE GONZALEZ was employed by Defendants as a tree pruner, cutter, machine operator tree, and overall construction worker from January 2020 until February 2023. He generally worked over 40 hours a week.

54.     JORGE was paid $250 a day in 2020, then $325 a day from 2021 to 2023, and then $375 a day from November 2022 through April 2023, only if the work crew hit a quota of $8,000-$9,000 of invoiced work a day.  If the quota wasn't hit, then he would earn half his daily wages.

JORGE was paid by cash.

55.     During the work-week of April 8, 2022 to April 14, 2022, JORGE worked about 72 hours, but was only paid $1,950 in cash.  During that work-week, JORGE was not paid an overtime premium.

56.     ERICK GUARDADO was employed by Defendants as a tree climber, pruner, cutter, machine operator and overall construction worker from September 2020 until April 2023. He generally worked over 40 hours a week.

57.     ERICK was paid $225 a day from 2020 to 2023 only if the work crew hit a quota of $8,000-$9,000 of invoiced work a day.  If the quota wasn't hit, then he would earn half his daily wages. ERICK was paid in cash.

58.     During the work-week of April 8, 2022 to April 14, 2022, ERICK worked about 72 hours, but was only paid $1,350 in cash.  During that work-week, ERICK was not paid an overtime premium.

59.     NOE GONZALEZ was employed by Defendants as a tree pruner, cutter, machine operator tree, and overall construction worker from June 2021 to November 2021 and March 2022 to July 2022 and February 2023 until April 2023. He generally worked over 40 hours a week.

60.     NOE  was paid $200 a day from 2021 to 2023 only if the work crew hit a quota of $8,000-$9,000 of invoiced work a day.  If the quota wasn't hit, then he would earn half his daily wages. NOE was paid by cash.

61.     During the work-week of April 8, 2022 to April 14, 2022, NOE worked about 72 hours, but was only paid $1,200 in cash. During that work-week, NOE was not paid an overtime premium.

62.     GEOVANNY RAMIREZ was employed by Defendants as a driver, tree pruner, cutter, planter, trimmer, machine operator, and overall construction worker from March 2021 until April 2023. He generally worked over 40 hours a week.

11

63.     GEOVANNY RAMIREZ was paid $300 - $350 a day from 2021 to 2023 only if the work crew hit a quota of $8,000-$9,000 of invoiced work a day. If the quota wasn't hit, then he would earn half his daily wages. GEOVANNY was paid by cash.

64.     During the work-week of May 7, 2021 to May 13, 2021, GEOVANNY worked about 72 hours, but was only paid $1,800 in cash.  During that work-week, GEOVANNY was not paid an overtime premium.

65.     CHARLES, MICHELE, and the CORPS. did not accurately record or report the hours Plaintiffs worked.

66.     The checks provided to Plaintiffs were false and failed to properly account for hours worked or wages paid.

67.     The cash portions of Plaintiffs' pay did not contain withholds for Federal Income Tax, N.Y.S. Income Tax, Social Security, and Medicare and was not included in their wages reported to the IRS under Form W-2 by Defendants.

68.     With respect to the cash paid to Plaintiffs, Defendants failed to provide a pay statement containing gross and net wages, itemized deductions, and/or itemized allowances. Accordingly, upon information and belief, Defendants failed to properly pay the payroll taxes for those cash payments to Plaintiffs like Social Security, Medicare, Federal Unemployment (FUTA), N.Y.S. Unemployment Insurance (SUI), N.Y. Reemployment, N.Y. Metropolitan Transportation Mobility Tax (MCTMT), and N.Y. Disability Benefits (SDI).

69.     Plaintiffs did not supervise any other employee and had no supervisory authority whatsoever over any other person.

70.     While Plaintiffs and Collective and Class plaintiffs worked in excess of forty hours a week, Defendants willfully failed to pay them minimum wage and overtime compensation for the overtime hours worked.

71.     Also, Plaintiffs and Collective and Class plaintiffs typically worked more than ten hours each day during the week, yet Defendants willfully failed to pay them spread of hours wages.

72.     When Defendants hired Plaintiffs, and Collective and Class plaintiffs, they never furnished them with a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

73.     Defendants never paid Plaintiffs, and Collective and Class plaintiffs, wages  with a pay  statement containing the following information: employer's name, address and phone number, employee's name, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions, and/or itemized allowances.

74.     Defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights, and employee rights by the NYLL.

75.     During all relevant times, Defendants failed to maintain accurate and sufficient records of those hours Plaintiffs worked and those wages paid to them.

76.     Defendants knew that nonpayment of overtime would economically injure Plaintiffs, the FLSA Collective Plaintiffs and members of the Class, and violated State and Federal laws.

77.     Defendants committed the following acts against Plaintiffs, the FLSA Collective Plaintiffs and members of the Class knowingly, intentionally and willfully.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Violations, including 29 U.S.C. 201 *et seq*.)**
**(Brought by Plaintiffs on Behalf of themselves, Collective**
**Plaintiffs and the Class)**

78.    Plaintiffs, on behalf of themselves, the Class and other FLSA Collective Plaintiffs, reallege and incorporate by reference all previous paragraphs.

79.    At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to Plaintiff for those hours worked in excess of forty hours per workweek.

80.    At all relevant times, Defendants has and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Plaintiffs and FLSA Collective Plaintiffs at one and one half times the minimum wage for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

81.    At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at the required overtime rate of one and a half times the federal minimum wage for hours worked in excess of forty (40) hours per workweek.

82.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(New York Overtime Violations, including N.Y. Stat. §§ 650 et seq.,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 142 – 2.2 and 146-1.4)**
**(Brought by Plaintiffs on Behalf of Themselves, Collective Plaintiffs and the Class)**

83.    Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

84. Defendants willfully violated Plaintiffs' rights by failing to pay them, and the Class, overtime compensation at a rate of not less than one-half times his hourly wage for each hour worked in excess of forty hours per workweek, violating 12 N.Y.C.R.R. §§ 146-1.4, 142- 2.2.

85. As a result of Defendant's willful and unlawful conduct, Plaintiffs and the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and- post judgment interest, costs and attorney's fees, as provided by N.Y. Lab. Law § 663.

**THIRD CLAIM FOR RELIEF**
**(New York Notice Requirements, including N.Y. Lab. L. §§195 and 198)**
**(Brought by Plaintiffs on Behalf of Themselves, Collective Plaintiffs and the Class)**

86. Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

87. Defendants failed to furnish to Plaintiff at the time of hiring a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of N.Y. Lab. Law § 195(1) and 12 N.Y.C.C.R. § 146-2.2.

88. The written notices serve "as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves." Denying Plaintiffs such notice impinged on Plaintiffs' interests in not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay.

89. Due to Defendants' violating N.Y. Lab. Law § 195(1), Plaintiffs, and the Class, are entitled to recover from Defendants liquidated damages, up to a maximum of $5,000.00 per

Plaintiff, reasonable attorney's fees, and costs and disbursements of this action under N.Y. Lab. Law § 198(1-b).

**FOURTH CLAIM FOR RELIEF**
**(New York Wage Statement Requirements, including  N.Y.**
**Lab. L. §195 and N.Y. Comp. Code R. & Regs. 12, § 146-2.3)**
**(Brought by Plaintiffs on Behalf of Themselves, Collective Plaintiffs and the Class)**

90. Plaintiffs, on behalf of themselves, the Class, and other FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

91. Defendants paid  Plaintiffs, and the Class,  wages, either by cash, or with a pay stub containing the following missing and/or willfully incorrect information: employer's name, address and phone number, employee's name, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions, and/or itemized allowances, violating N.Y. Lab. Law § 195(3) and 12 N.Y.C.C.R. § 146-2.3.

92. Additionally, Defendants are required to keep records for six years, which must include accurate records of employer's name, address and phone number, employee's name, dates covered by payment, basis of payment, hours worked, regular rates of pay, overtime rates of pay, gross and net wages, itemized deductions and/or itemized allowances.

93. Despite its obligations, Defendants failed to keep records in accordance with 12 N.Y.C.C.R. § 146-2.1.

94. The wage statements  serve "as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves." Denying Plaintiffs such notice impinged on Plaintiffs' interests in not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay.

95. Due to Defendants violating N.Y. Lab. Law § 195(3) and 12 N.Y.C.C.R. § 146-2.3, Plaintiffs are entitled to recover from Defendants liquidated damages, up to a maximum of $5,000.00, reasonable attorney's fees, and costs and disbursements of the action, pursuant to N.Y.

Lab. Law § 198(1-d).

## FIFTH CLAIM FOR RELIEF
### (Civil Damages for Fraudulent Filing of Returns, including 26 U.S. Code § 7434)

96.   Plaintiff ROMULO   realllege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

97.   In 2022, Defendants paid Plaintiff ROMULO, in part, by check, wherein those payments contained the following withholds: Social Security Employee; Medicate Employee, and NY– Disability.

98.   In 2022, Defendants also paid Plaintiff ROMULO, in part, in cash, "off the books" without a check or paystub.  Such "off the book" cash payments failed to mandatorily withhold for Federal Income Tax, N.Y.S. Income Tax, Social Security, and Medicare, and Defendants failed to properly pay the payroll taxes (employer expenses) for those cash payments like Social Security, Medicare, Federal Unemployment (FUTA), N.Y.S. Unemployment Insurance (SUI), N.Y. Reemployment, N.Y. Metropolitan Transportation, Mobility Tax (MCTMT), and N.Y. Disability Benefits (SDI).

99.   Defendants are required to report all wages paid to employees to the IRS, and furnish each employee an IRS Form W-2 indicating those wages Defendant reported to the IRS for that employee.  Defendants are then required to file Form W-3 (Transmittal of Income and Tax Statements) which list the employee information provided in Form W-2. The W-3 is initially filed with the Social Security Administration, who forwards it to the IRS.  The IRS verifies the accuracy of the W-3 with the W-3's and provides a reconciliation of the quarterly tax payments for the year.

100.   Defendants are also required to file their quarterly taxes with NY State (NYS-45 or NYS-45-ATT) and the IRS (Form 941) indicating all employee wages paid.  Defendants are required to list each employee and indicate their wages paid on their yearly tax returns – those wages listed must align with the W-2's issued.

101.  Defendants knew they made cash payments to Plaintiffs and further knew those payments should have been included on the W-2's issued to Plaintiffs and reflected on Defendants income tax returns. Accordingly, Defendants filed income tax returns as those returns contained false wages paid to Plaintiffs.

102.  Accordingly, Defendants have fraudulently and willfully filed income tax returns in 2022 for ROMULO and are therefore liable thereof.

### SIXTH CLAIM FOR RELIEF
### (Unlawful Retaliation)

103.  Plaintiffs, Romulo Herrera, Caleb Gonzalez, Edwin Duran, Jorge Gonzalez, Erick Guardado and Noe Gonzalez reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

104.  Section 215(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), prohibits retaliation against an employee or former employee because she or he "has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the rights contained in the FLSA.

105.  Plaintiffs served Defendants with this action on Defendants.

106.  As a direct and proximate result of receiving this Complaint, on May 8, 2024, Defendants served subpoenas on the following companies: Big Brother Tree Service, Branching Out Tree Service, Dank Tree Service, Diesel Direct, Golden Pine Tree Service, JCs Tree Service, JR's and We Care commanding the following: "with respect to the employment of Romulo Herrera, Caleb Gonzalez, Edwin Duran, Jorge Gonzalez, Erick Guardado &/or Noe Gonzalez from 2017-current: all documents identifying (i) dates of employment; & (ii) terms & conditions of employment (e.g. communications, schedules, time records, wage records, personnel files) (the "Subpoenas").

107.  The Subpoenas requested documents are beyond the scope of the subject plaintiff's alleged employment period, and sent in an orchestrated effort to intimidate, and to draw potential, past and/or former employers into this conflict and are detrimental to Plaintiffs Romulo

Herrera, Caleb Gonzalez, Edwin Duran, Jorge Gonzalez, Erick Guardado and Noe Gonzalez job prospects.

108. Defendants' actions constitutes a retaliatory action, undertaken in direct response to Plaintiffs' Complaint.

109. Defendants committed the acts herein alleged maliciously and oppressively with the wrongful intent to injure Plaintiffs. Defendants acted with an improper and motive amounting to malice and a conscious disregard for Plaintiffs' rights. The acts taken towards the Plaintiff were carried out by Defendants acting in deliberate, callous and intentional manner with a desire to injure and damage.

110. Pursuant to § 216(b) of the FLSA, 29 U.S.C. § 216(b), and New York Lab. Law 215. Plaintiffs are entitled to legal and equitable relief including compensatory and punitive damages, as well as reasonable attorney's fees and costs.

111. Plaintiffs filed the required notice with the Office of the Attorney General, Department of Law, in compliance with N.Y. Lab. Law § 215 (1)(b).

## DEMAND FOR TRIAL BY JURY

Plaintiffs, the Class and other FLSA Collective Plaintiffs, demand a trial by jury on all issues so triable as a matter of right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays this Court grant as relief the following:

    a. Designating this action as a collective action on behalf of the collective action members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consents to sue pursuant to 29 U.S.C. § 216(b) and appointing the plaintiff and the plaintiff's attorneys to represent the collective action members;

b. Alternatively, to designate this action as a Rule 23 class action, and appoint the plaintiff and the plaintiffs' attorneys to represent the class members;

c. Declaring that the practices complained of herein are unlawful under the FLSA and the N.Y. Lab. Law ;

d. Awarding all unpaid compensation due under the FLSA and NYLL;

e. Awarding Plaintiff an award of overtime under the FLSA and N.Y. Lab. Law;

f. Awarding Plaintiff liquidated damages due to Defendants' willful failure to pay overtime under the FLSA and N.Y. Lab. Law;

g. Awarding Plaintiff liquidated damages as a result of Defendants' failure to furnish a notice at the time of hiring under the N.Y. Lab. Law;

h. Awarding Plaintiff liquidated damages as a result of Defendants' failure to furnish correct statements with each payment of wages under the N.Y. Lab. Law;

i. Awarding Plaintiffs' damages for Defendants Fraudulent Filing of Tax Returns;

J. Awarding Plaintiffs' damages for Defendants unlawful retaliation claim;

k. Awarding Plaintiffs pre-judgment interest;

l. Awarding Plaintiffs post-judgment interest;

m. Awarding Plaintiffs attorneys fees;

n. Awarding Plaintiffs 15% increase in any judgment that remains uncollected after 90 days; and

o. Granting such other and further relief as this Court deems just and proper.

Dated: May 28, 2023

By:_____/s/_____
      Marcus Monteiro
*mmonteiro@mflawny.com*
**MONTEIRO & FISHMAN LLP**
91 N. Franklin Street, Suite 108
Hempstead, New York 11550
Telephone: (516) 280.4600

Facsimile: (516) 280.4530
Attorneys for Plaintiffs,
Collective Plaintiffs and
Class Plaintiffs